IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGE ALEXANDER WATSON, BOP # 70398-019, | HABEAS CORPUS 28 U.S.C. § 2255 |
| Movant, | CIVIL ACTION FILE NO. 1:17-CV-4610-ELR-JKL |
| v. | |
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 1:16-CR-216-ELR-JKL |
| Respondent. | |

**ORDER AND FINAL REPORT AND RECOMMENDATION**

Federal inmate George Alexander Watson Taylor has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. [Doc. 15.] For the reasons set forth below, the undersigned recommends that the motion to vacate be **DENIED**.

## I.     BACKGROUND

On June 15, 2016, Movant was charged by criminal information with wire fraud in violation of 18 U.S.C. § 1343. [Doc. 1.] Movant consented to proceeding by information rather than indictment. [Doc. 2.] On August 8, 2016, Movant pled guilty to wire fraud. At the change of plea hearing, the Government summarized the evidence against Movant, explaining that Movant "was employed on a contract basis as a financial specialist at Allstate Financial Services, LLC, from February 2008

until in or about February of 2012" and conducted business as a contractor under the name Watson Advisory Group. [Doc. 18 at 17.] Movant "serviced Allstate Financial Services' investment clients by selling and supporting investment vehicles such as IRAs and annuities," but beginning on or about December 23, 2009, Movant "began falsely and fraudulently representing to Allstate Financial Services investment clients that he was investing client funds into agreed-upon investment vehicles when, in fact, he was . . . using the money for his own purposes." [*Id.* at 17-18.]

Movant left Allstate Financial Services in or about February 2012, and took certain Allstate Financial Services clients with him. [Doc. 18 at 18.] Clients Movant serviced "provided him funds via checks and wire transfers with which to conduct investments on their behalf," but "rather than invest those funds into the agreed-upon investment vehicle, [Movant] kept the funds for himself while falsely and fraudulently representing to investment clients that their funds were invested in those agreed-upon investment vehicles . . . ." [*Id.* at 18.]

Movant testified at the change of plea hearing that he understood the terms of the written plea agreement, further stating that he entered into the plea freely and voluntarily. [Doc. 18 at 10.] Movant stated that he had adequate time to discuss the case and plea with his attorney and that he was satisfied with his legal representation.

[*Id.* at 13.]  The limited appeal waiver contained in the plea agreement was read aloud, and included the following language:

> [T]he defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding, including but not limited to motions filed pursuant to Title 28, United States Code, Section 2255, on any ground . . . .  Claims that defendant's counsel rendered constitutionally ineffective assistance are excepted from this waiver.

[*Id.* at 15-16.]  Movant stated that he understood the limited waiver of appeal.  [*Id.* at 16.]  When the Court asked Movant if he needed further clarification of any of the issues discussed, Movant responded that he did not.  [*Id.* at 21.]

On November 9, 2016, the Court sentenced Movant to thirty-seven months' imprisonment with three years' supervised release.  [Doc. 11.]  He was further ordered to pay restitution in the amount of $1,007,910.51.  [*Id.* at 5.]  At the sentencing hearing, the Court noted a sentencing guidelines range of 41 to 51 months.  [Doc. 13 at 4.]  The government recommended a one-level downward variance for Movant's expeditious entry of a guilty plea, which reduced the guidelines range to 37 to 46 months.  One victim, Vickie Helfenstine, testified that Movant took over a million dollars of her money.  [*Id.* at 6-12.]

Movant was given an opportunity to address the Court and did not deny that he had misused over $1 million of Ms. Helfenstine's money.  Movant also testified,

seemingly addressing the amount of money that he misappropriated: "The first time I met with Agent Keys, the FBI, he was showing me things. I couldn't even grasp it. I still most days can't even understand how I got to the amounts that those would be. But people have shown me, and I believe what I see."[1] [Doc. 13 at 28.] The Court asked Movant for clarification: "Is it your position that you spent over a million dollars in drugs?" [*Id.* at 29.] Movant responded that he spent approximately 80 percent of the victim's money on drugs, sometimes $15,000 per week. [*Id.* at 29-31.] His lawyer testified that Movant developed a $5,000-$10,000 per week drug habit that lasted for three years, which "adds up to fit with the amount of money that's gone." [*Id.* at 34.] No objection was made to the proposed restitution amount. [*Id.* at 36.]

Movant did not appeal his conviction and sentence, but on November 13, 2017, he filed this motion to vacate asserting the following claims: (1) his attorney provided ineffective assistance by failing to challenge or advise a challenge could be made to the financial loss amount enhancement; (2) his counsel was ineffective at sentencing by failing to object to the false and misleading testimony of Ms. Helfenstine; (3) his counsel was ineffective at sentencing by failing to disclose

---

[1] Movant's attorney later clarified that the amount Movant was first shown as a projected loss was $650,000 to Ms. Helfenstine. [Doc. 13 at 34.]

Movant's extensive treatment for substance abuse; and (4) his counsel was ineffective at sentencing by failing to respond "honestly, reasonably, and adequately" when asked whether Movant's employer was aware of his legal problems. [Doc. 15.] The government filed a response to the motion on January 8, 2018, and on August 13, 2018. [Docs. 19, 25.] Movant filed a reply brief on September 21, 2018. [Doc. 28.]

## II.   DISCUSSION

### A.   The Standard for Relief Under § 2255

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. A sentence is otherwise subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice. *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Collateral relief, however, is limited. "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted," *United States v. Frady*, 456 U.S. 152, 164 (1982), and it is the movant's

burden to establish his right to collateral relief, *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015), *cert. denied*, __ U.S. __, 136 S. Ct. 267 (2015).

An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Fontaine v. United States*, 411 U.S. 213, 215 (1973).

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). To establish deficient performance, a movant must establish that no objectively competent lawyer would have taken the action that his lawyer took or would have failed to take the action he contends the lawyer should have taken. *Id.* at 1315.

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, *i.e.*, whether "there is a

6

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Id.* at 697.

### B. Ground One

In Ground One, Movant contends that his counsel was ineffective because he did not challenge the financial loss enhancement. Movant's plea agreement included a financial loss amount of $652,000. [Doc. 6-1 at 5, 7-8.] Movant states that this amount included a $200,000 business loan that was made in good faith before his fraudulent activities began, which should not have been included in the loss amount. Movant does not contest the restitution he was ordered to pay, only the amount of loss related to fraud. He asks that his sentence be recalculated with a two-point reduction based on lowering the loss amount from $550,000-$1,000,000 to $250,000-$550,000. [Doc. 15 at 4.]

Assuming that defense counsel's performance was deficient, to successfully allege ineffective assistance of counsel, Movant must be able to show a reasonable probability that but for his counsel's error, the outcome would have been different. *Strickland*, 466 U.S. at 694. As the government points out, Movant has not

established that the government would have agreed to or that the Court would have accepted a plea agreement containing a loss amount under $550,000, especially considering the unchallenged restitution amount was over $1,000,000. *See Bello v. United States*, Nos. 1:10-CR-397-WSD, 1:14-CV-607-WSD, 2016 WL 8668490, at *6 (N.D. Ga. Oct. 14, 2016) (rejecting movant's argument that had counsel been more effective, the government would have offered and the movant would have accepted a more favorable plea deal as "rank speculation" and insufficient to support a finding of prejudice).

Movant's contention regarding the loss amount is also contradicted by the record. The loss amount was discussed at both Movant's plea and sentencing hearings. At the plea hearing, Movant testified under oath that he understood the terms of his plea agreement, which included a loss amount of $652,162.34, and that he was entering into the plea freely and voluntarily. [Doc. 18 at 10; Doc. 6-1 at 7-8.] At the sentencing hearing, Movant represented that he did not disagree with the loss amount. [Doc. 13 at 28.] Movant's current allegation that the loss amount was $200,000 too high does not overcome the strong presumption of the veracity of his sworn statements during the plea and sentencing hearings. *See United States v. Palacios*, 516 F. App'x 734, 737 (11th Cir. 2013) (finding that movant did not overcome presumption of truth during plea colloquy); *United States v. Juncal*, 245

F.3d 166, 171 (2nd Cir. 2001) (noting that testimony at plea allocution "carries a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony"); *United States v. Farah*, Criminal No. 11-87 (MJD/JJK), Civil No. 13-730 (MJD), 2013 WL 4519345, at *3 (D. Minn. Aug. 26, 2013) ("Petitioner's belated and barebones claim that she did not commit the crimes to which she pled guilty is insufficient to overcome the strong presumption of truth of her prior statements made during the guilty plea hearing . . . ."). Accordingly, Movant has not established that he is entitled to relief on this ground.

### C. Ground Two

In Ground Two, Movant contends that his counsel was ineffective at the sentencing hearing by failing to challenge Ms. Helfenstine's testimony that Movant took over a million dollars of her money. [Doc. 28 at 1.] Movant contends that the Presentence Investigation Report ("PSR") estimated her total investment with Movant as $700,000. [*Id.*] Movant further states in his reply brief that he did not object to Ms. Helfenstine's testimony at the sentencing hearing because his counsel advised him "not to challenge amounts stated by [the] victim." [*Id.*]

The Government notes that: (1) prior to sentencing, the restitution amount increased from the $652,162.34 listed in Movant's plea agreement to $1,007,910.51;

(2) defense counsel confirmed at sentencing that the PSR included a restitution amount of over a million dollars and represented that defendant did not object to that amount; and (3) Movant is not challenging the restitution amount in this § 2255 motion. [Doc. 11 at 5; Doc. 13 at 36; Doc. 15 at 4.] Moreover, the Court questioned Movant repeatedly about the amount of money Ms. Helfenstine had given to him and what he had done with it. [Doc. 13 at 29-31.] Movant repeatedly implied agreement with the million-dollar amount and explained that at times he was spending $15,000 per week on drugs. [*Id.*]

Movant has not shown that counsel was deficient in failing to challenge the victim's testimony considering the restitution amount set forth in the PSR. "The decision as to whether to cross-examine a witness is a tactical one well within the discretion of a defense attorney." *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (internal quotation marks and citation omitted). Such "strategic choices are virtually unchallengeable." *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) (internal quotation marks and citations omitted); *see also Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010) (noting that the questioning of witnesses is the "epitome of a strategic decision") (citations omitted).

Even assuming that counsel had performed deficiently, Movant has failed to show that his sentence would be different if counsel had cross examined the victim.

"A claim based on counsel's failure to properly cross-examine a prosecution witness is a difficult one to establish." *Cox v. United States*, Nos. 2:12-CV-242, 2:05-CR-002, 2014 WL 12748746, at *11 (N.D. Ga. Feb. 28, 2014). "Ineffective assistance . . . will not be found merely because other testimony might have been elicited from those who testified." *Fugate*, 261 F.33d at 1220 (internal quotation marks and citations omitted). Other than stating "it is clear the outcome would have been different," Movant has not alleged how the outcome of his sentencing would have been different if his counsel has cross-examined the victim as to the amount she invested and lost with Movant. Movant has not established that he is entitled to relief on this claim.

### D. Ground Three

In Ground Three, Movant contends that his counsel was ineffective at the sentencing hearing by failing to disclose to the Court the details of Movant's treatment for substance abuse. Movant states that when the Court "asked about treatment directly, other than Narcotics Anonymous, [counsel] neglected to respond reasonably or adequately." [Doc. 15 at 7.] Movant further states that counsel rejected Movant's request to have treatment professionals provide testimony as "[n]ot helpful." [*Id.*] Movant contends such testimony would have affected the Court's analysis of the 18 U.S.C. §3553(a) factors.

11

Movant does not, however, specify what further information his counsel should have provided to the Court.  Defense counsel discussed Movant's substance abuse treatment in his sentencing memo.  [Doc. 9 at 8-9.]  The sentencing memorandum and letters submitted from individuals in the Narcotics Anonymous ("N.A.") program were read and considered by the Court at sentencing.  [Doc. 13 at 17.]  Movant's wife and his N.A. sponsor testified about his recovery.  [*Id.* at 20-22, 24.]

Without knowing what specific information counsel omitted, it is impossible to determine the impact additional information and testimony would have made on Movant's sentence.  "To prevail on a claim of ineffective assistance of counsel for failing to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Gannaway v. United States*, Nos. 8:13-cv-1635-T-30MAP, 8:10-cr-59-T-30MAP, 2014 WL 345740, at *5 (M.D. Fla. Jan. 30, 2014). Movant has not shown deficient performance or prejudice with respect to this ground and is not entitled to relief.

### E.     Ground Four

In Ground Four, Movant asserts that his counsel was ineffective at the sentencing hearing when he did not advise the Court that Movant acted on the advice of counsel when he failed to inform his employer of his ongoing criminal prosecution.[2]  Movant has stated that his attorney did not answer honestly, reasonably, or adequately when questioned by the Court about Plaintiff's employment, but Movant does not identify in what way his counsel was dishonest, unreasonable, or inadequate and does not even suggest how his sentence would have been different had his counsel answered differently.  Rather, Movant expresses his regret taking the advice of counsel and not informing his employer because he later learned that he could have kept his position under a sentence of home confinement.

It is important to first note that counsel's advice on when to inform Movant's employer of his legal troubles is different and distinct from counsel's response to a question to the Court at sentencing about whether Movant had so informed his employer.  To the extent Movant is suggesting that counsel's advice was deficient, Movant has put forth no argument as to how different advice would have affected

---

[2] According to Movant, counsel's advice was based on the employer's code of conduct, which required employees to inform the employer at the outcome of a criminal prosecution.

his sentence. To the extent Movant is arguing that a different answer at the sentencing hearing would have encouraged the Court to impose home confinement, his argument is contradicted by the record. After defense counsel argued at length that the Court should impose a sentence of home confinement so that Movant could continue to work and make restitution payments, the Court disagreed that "restitution is at the heart of this case" and stated her "concern in fashioning a sentence is not to try to get payment back to" the victims. [Doc. 13 at 42.] Rather, the Court's focus was on Movant's "dishonest conduct." [*Id.*] Having shown no reasonable probability that the outcome would have been different if Movant had informed his employer earlier, or had defense counsel answer the Court differently, Movant is entitled to no relief on this ground.

### F. Ground Five

In Ground Five, Movant contends that his counsel was ineffective at the sentencing hearing by failing to seek a downward departure based on Movant's substantial assistance and the Government's delay in prosecuting. The record shows that Movant's counsel did argue that a downward departure for substantial assistance was appropriate both in his sentencing memo and at the sentencing hearing. [Doc. 9 at 11; Doc. 13 at 35.] Despite his counsel's efforts, it is ultimately up to the Government to move for downward departure based on a defendant's substantial

assistance. USSG § 5K1.1 (requiring "motion of the government stating that the defendant has provided substantial assistance"). Counsel's performance with respect to Movant's substantial assistance was not deficient and did not cause Movant prejudice.

Regarding a delay in prosecution, Movant contends that the government's delay in prosecuting him caused him to be ineligible for the Residential Drug Abuse Program ("RDAP"), which requires that an inmate have proof of substance abuse within 12 months of sentencing to be eligible for the program.[3] Movant states that he was drug-free from late 2012 until his sentencing. Movant concedes that the Court and the government recommended RDAP as a part of Movant's incarceration but is now contending that his counsel was ineffective because he did not seek a downward departure based on the government's delay.

Movant "does not allege, nor is the [C]ourt aware of any right of an accused to be prosecuted according to any particular schedule so long as the prosecution does not run afoul of the Speedy Trial Act or an applicable statute of limitations."

---

[3] The BOP policy used to deny Movant's entry into RDAP actually references substance abuse within 12 months of an inmate's arrest. [Doc. 23-1 at 7.] Because Movant was never arrested in this case, he has used his sentencing date as the date of arrest. Movant notes that he began treatment for substance abuse in August of 2012. The government did not formally charge him with a crime until June 15, 2016. He was then sentenced on November 10, 2016.

15

*Andrade-Arroyo v. United States*, Nos. CV F 07-0370 AWI, CR F 03-5331 AWI, 2009 WL 748228, at *3 (E.D. Cal. Mar. 20, 2009).  Moreover, eligibility for RDAP is fully within the discretion of the BOP.  *U.S. v. Mikhael*, No. 3:07cr57/MCR/CJK, 2012 WL 4093781, at *1 (N.D. Fla. Aug. 16, 2012) (citing *United States v. Jackson*, 70 F.3d 874, 878 (6th Cir. 1995); *Martin v. Sanders*, No. 2:06CV00112 JLH-JFF, 2006 WL 2079843, at *3 (E.D. Ark. July 10, 2006)).  Neither the government, the Court, nor Movant's counsel could have known whether he would be accepted into RDAP.  Movant's contention that his counsel was deficient because he did not seek a downward departure to which Movant was not entitled, based on information counsel could not have known, is without merit.  In addition, Movant has not shown that a downward departure would have been granted had his counsel requested it.  Movant has not established that he is entitled to relief on this ground.

### III.   CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that Movant's § 2255 motion be **DENIED**.  The undersigned further **RECOMMENDS** that a certificate of appealability be **DENIED** because Movant has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  Movant's motion

for an extension of time to file his § 2255 motion [14] is **GRANTED NUNC PRO TUNC**.

**IT IS SO ORDERED AND RECOMMENDED** this 10th day of January, 2019.

                                                                                   _____
                                                                                    JOHN K. LARKINS III
                                                                                    UNITED STATES MAGISTRATE JUDGE